# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **JUAN HERNANDEZ NEGRON,**<br>    **et al.,** | ) <br> ) <br> ) | **CASE NO.  1:24 CV 02132** |
| **Plaintiffs,** | ) <br> ) | **JUDGE DONALD C. NUGENT** |
| **v.** | ) <br> ) <br> ) | |
| **FRANK & WOOLRIDGE CO., LPA,** | ) <br> ) | **MEMORANDUM OF OPINION** |
| **Defendants.** | ) | **AND ORDER** |

This matter is before the Court on *Defendant Frank & Woolridge Co., LPA's* ("Frank &
Woolridge") *Motion to Stay and Compel Arbitration* (ECF #8), filed with this Court on January
22, 2025, in connection with Plaintiffs Juan Hernandez Negron's and Jennifer Acevedo
Delvalle's (collectively, "Plaintiffs") *Class Action Complaint for Damages* (ECF #1)
("Complaint") asserting that Frank & Woolridge violated the Fair Debt Collection Practices Act,
15 U.S.C. § 1692, *et seq.*, with respect to a Loan Agreement executed by Plaintiffs with Mariner
Finance LLC ("Mariner Finance") on October 6, 2021 ("Loan Agreement").  Frank & Woolridge
seeks to enforce the Arbitration Agreement included on page 3 of the four-page Loan Agreement
(*see* ECF #1-1), by moving the Court to stay the action and compel binding arbitration, as
required by the terms of the Loan Agreement, and specifically its incorporated Arbitration
Agreement.

For the reasons set forth below, *Defendant Frank & Woolridge Co., LPA's Motion to Stay and Compel Arbitration* (ECF #8) is GRANTED. This case is STAYED in its entirety pending completion of binding arbitration proceedings.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 6, 2021, Plaintiffs Juan Hernandez Negron and Jennifer Acevedo Delvalle opened an account with Mariner Finance by signing a four-page Loan Agreement titled "Note, Security Agreement & Arbitration Agreement (Ohio)," which contained on pages 3 and 4 an Arbitration Agreement, which was preceded by the following all-capital-letters, boldfaced, and surrounded-by-a-box text:

---

**READ THE BELOW ARBITRATION AGREEMENT CAREFULLY, IT PROVIDES, AMONG OTHER TERMS:**

- **YOU OR WE MAY ELECT TO HAVE DISPUTES BETWEEN US RESOLVED BY BINDING ARBITRATION INSTEAD OF IN COURT.**
- **IN ARBITRATION YOU GIVE UP THE RIGHT TO SUE IN COURT AND DISCOVERY AND RIGHTS OF APPEAL ARE LIMITED. A NEUTRAL ARBITRATOR RESOLVES THE DISPUTE INSTEAD OF A JUDGE OR JURY.**
- **YOU MAY NOT PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER IN ARBITRATION OR IN ANY OTHER CONSOLIDATED PROCEEDING.**
- **YOU MAY REJECT THE BELOW ARBITRATION AGREEMENT FOR A CERTAIN AMOUNT OF TIME AFTER THE NOTE DATE,**

*The below Arbitration Agreement does not apply to any "covered borrower" as defined in the Military Lending Act*

---

This highlighted heading is followed by the substantive text of the Arbitration Agreement, which states in pertinent part:

---

[1]

The Court enters a stay pursuant to the Supreme Court decision in *Smith v. Spizzirri*, No. 22-1218, 144 S. Ct. 1173 (May 16, 2024) (When a district court finds that a lawsuit involves an arbitrable dispute and a party has requested a stay of the court proceeding pending arbitration, Section 3 of the Federal Arbitration Act compels the court to issue a stay rather than dismissal without prejudice).

By signing this note, you agree to this Arbitration Agreement (Agreement).  This Agreement is part of your note.  In this Agreement, "you." "we," "us," and "our" include subsidiaries, affiliates, agents, employers, successors, and assigns.

**Arbitration Agreement.**  You or we may elect to have any Claim (defined below) resolved by neutral binding arbitration instead of in court.  You waive any right you have to resolve a Claim between you and us in court.  You waive any right you have to participate as a class representative or class member.

**Claim.**  Claim means any claim or dispute, whether arising in law, equity, or otherwise, and regardless of the type of relief sought arising from or relating to your application for credit, the note, the origination, servicing and enforcement of the obligation, any insurance contract or warranty or other product or service you buy, and any relationship that results from the note, the underlying obligation or any of the foregoing.  Claim includes initial claims, counterclaims, cross-claims, and third-party claims.  Claim also includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation and ordinance.  "Claim" does not include any dispute or controversy about the validity, enforceability or scope of this Agreement or any part thereof (including, without limitation, the Class Action Waiver set forth below, subparts (A) and (B) of the "Other Agreements" section set forth below and/or this sentence); all such disputes or controversies are for a court and not an arbitrator to decide.  Any dispute or controversy that concerns the validity, enforceability or scope of the note as a whole is for the arbitrator, not a court, to decide.

> \* \* \*

**Non-waiver.**  Even if a Claim is brought in court, you or we may choose to arbitrate any Claim made by a new party or any Claim later asserted by a party in that action or any related or unrelated lawsuit.  Nothing in that litigation shall constitute a waiver of any rights under this Agreement.

(ECF #1-1, *Note, Security Agreement & Arbitration Agreement (Ohio)*, PageID #12).

The Arbitration Agreement contained in the Loan Agreement also includes a Class

Action Waiver, displayed in boldfaced all capital letters:

> **CLASS ACTION WAIVER.  OTHER THAN AS EXPRESSLY PROVIDED IN THIS AGREEMENT, YOU AND WE AGREE THAT IF ARBITRATION IS ELECTED, ONLY AN ARBITRATOR MAY RESOLVE CLAIMS.  YOU AGREE NOT TO BRING OR PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER IN ANY CLASS ACTION IN COURT OR IN ARBITRATION OR IN ANY OTHER CONSOLIDATED PROCEEDING OR PRIVATE ATTORNEY GENERAL ACTION.  ANY CLAIM BETWEEN YOU AND US MUST BE RESOLVED ON AN INDIVIDUAL BASIS. ARBITRATION IS NOT AVAILABLE AND WILL NOT BE CONDUCTED ON A CLASS-WIDE OR CONSOLIDATED BASIS.**

(ECF #1-1, PageID #13).

As noted in the *Complaint* filed in this case, in March 2024, Defendant (in this federal court matter) Frank & Woolridge, a law firm incorporated under the laws of the State of Ohio engaged in the practice of consumer debt collection, filed a collection case against Juan Hernandez Negron and Jennifer Acevedo Delvalle in the Lorain County Court of Common Pleas captioned *Mariner Finance, LLC v. Juan Hernandez, et al.*, Case No. 24CV211728 (Hernandez Negron and Acevedo Delvalle are Defendants in the state court matter and Plaintiffs in this federal court matter), "seeking to collect interest charged through the Loan Agreement." (ECF #1, *Complaint*, ¶¶ 3 & 11; *see also* ECF #12-2, *Public Docket Information* related to the Lorain County case). After a few months of activity in the state court matter related to obtaining service on Hernandez Negron and Acevedo Delvalle,[2] and no responses having been filed for ever 30 days, on September 16, 2024, Frank & Woolridge (counsel for Plaintiff Mariner Finance in the state court matter, and Defendant in this federal court matter) filed a *Motion for Default* against Hernandez Negron and Acevedo Delvalle. (*See* ECF #12-2, PageID # 78).

Four days after the filing of the *Motion for Default*, Hernandez Negron and Acevedo Delvalle entered an appearance through counsel and filed a *Motion for Leave to Plead* in response to the state court complaint. (ECF #12-2, PageID # 78). On September 30, 2024, the state court set a case management conference for October 29, 2024. (ECF #12-2, PageID # 78). At the case management conference, Frank & Woolridge, on behalf of Mariner Finance, agreed to withdraw the *Motion for Default*, and Hernandez Negron and Acevedo Delvalle were given

---

[2]     Service was obtained on each of the Defendants in the state court action (Hernandez Negron and Acevedo Delvalle) on July 22, 2024. (*See* ECF #12-2, PageID # 77).

until November 18, 2024 to file a responsive pleading.  (ECF #12-2, PageID # 78).

On November 18, 2024, Hernandez Negron and Acevedo Delvalle filed an *Answer and Counterclaims to Plaintiff's Complaint for Damages*, in response to which Frank & Woolridge, on behalf of Mariner Finance, filed a *Motion to Compel Arbitration and Stay Proceedings* on December 16, 2024.  (ECF #12-2, PageID # 78).

Meanwhile, on December 10, 2024, Hernandez Negron and Acevedo Delvalle (as Plaintiffs in this federal court matter),[3] filed before this Court a *Class Action Complaint for Damages* (ECF #1), which seeks to assert a single count, alleged violation by Frank & Woolridge of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, specifically, that the Loan Agreement on which the collection proceedings filed in state court are predicated sets an interest rate that is higher than the maximum amount of interest permitted by Ohio law.[4]  Defendant Frank & Woolridge was given until January 23, 2025 to respond to the *Complaint*.  (*See* ECF #4 & Non-Document Order).

On January 22, 2025, Frank & Woolridge filed its *Answer to Complaint*, (ECF #7), and the *Motion to Stay and Compel Arbitration* now before the Court.  (ECF #8).

---

[3]

In order to describe the state court matter filed in the Lorain County Court of Common Pleas, the given names of Hernandez Negron and Acevedo Delvalle were used to not create confusion over their posture as Defendants in the state court matter and as Plaintiffs in this federal court matter.  Now that the discussion returns to the matter before this Court in this *Memorandum of Opinion and Order*, Hernandez Negron and Acevedo Delvalle are referred to as "Plaintiffs," their posture in this federal court case.

[4]

*See* OHIO REV. CODE § 1321.57 & § 1321.571.  (ECF #1, *Complaint*, ¶¶ 7-11).

## II. <u>LEGAL ANALYSIS</u>

### A. <u>Application of the Federal Arbitration Act</u>

As a preliminary matter, there is no dispute that the Federal Arbitration Act, 9 U.S.C. § 1,

*et seq.*, applies in this case, as indicated in the text of the Arbitration Agreement:

> **Applicable Law.** This Agreement relates to a credit transaction involving interstate commerce and is governed by the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*) and only in the event and to the limited extent that the Federal Arbitration Act does not apply, the law of the state governing your note will apply.

(ECF #1-1, PageID #13).[5]

The proper course of action when a federal district court finds that a binding arbitration

agreement applies to a dispute before it, is to stay the case versus dismissing it under Federal Rule

of Civil Procedure 12(b)(6). *Smith v. Spizzirri*, No. 22-1218, 144 S. Ct. 1173 (May 16, 2024)

(When a district court finds that a lawsuit involves an arbitrable dispute and a party has requested

a stay of the court proceeding pending arbitration, Section 3 of the Federal Arbitration Act

compels the court to issue a stay rather than dismissal without prejudice) (*see* note 1, *supra*).[6]

Section 2 of the Federal Arbitration Act provides that when a contract "evidencing a

transaction involving [interstate] commerce" contains an arbitration provision, that provision

"shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity

---

[5]     Nor is there any dispute that Ohio law will apply to the substantive matters to be decided by an arbitrator, as is evident from the title of the note, "*Note, Security Agreement & Arbitration Agreement (Ohio).*" (ECF #1-1).

[6]     Prior practice was to dismiss the action without prejudice prior to compelling arbitration. See, e.g., *Norberg v. Iprecheck, LLC*, No. 1:22-CV-00177, 2023 U.S. Dist. LEXIS 16341 (S.D. Ohio Jan. 30, 2023) ("The Sixth Circuit, however, says that the proper vehicle for dismissing a case in favor of arbitration is Federal Rule of Procedure 12(b)(6) not Rule 12(b)(1)."), *citing Knight v. Idea Buyer, LLC*, 723 Fed. App'x 300, 301 (6th Cir. 2018) (decided under prior law).

for the revocation of any contract." 9 U.S.C. § 2; *Buckeye Check Cashing, Inc. v. Cardegna*, 546

U.S. 440, 443 (2006).  The Supreme Court of the United States has indicated that the Federal

Arbitration Act applies broadly, and applies to any transaction directly or indirectly affecting

interstate commerce.  *See, e.g.*, *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995).

In determining whether to grant a motion to compel arbitration and to stay proceedings

under the Federal Arbitration Act, courts must consider two issues:  (1) whether the parties agreed

to arbitrate; and (2) whether the scope of the arbitration clause covers the plaintiff's claims.  *Jaludi*

*v. Citigroup*, 933 F.3d 246, 254 (3d Cir. 2019); *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d

211, 214 (5th Cir. 2003).  The party resisting arbitration bears the burden of proving the claims are

not suitable for arbitration.  *Green Tree Fin. Corporation-Alabama v. Randolph*, 531 U.S. 79, 91

(2000).

Here, Plaintiffs acknowledge that they signed the Loan Agreement and its included (and

rather prominently highlighted and displayed) Arbitration Agreement provisions.  (*See* ECF #1,

*Complaint*, ¶ 6; ECF #1-1, *Note, Security Agreement & Arbitration Agreement (Ohio)*, attached to

the *Complaint*).  Plaintiffs acknowledge that the sole issue raised in its *Complaint*, alleging that

the Loan Agreement sets an interest rate that is higher than the maximum amount of interest

permitted by Ohio law, is one contemplated to be subject to the Arbitration Agreement.[7]

Plaintiffs raise three arguments as to why they believe Defendant Frank & Woolridge's

---

[7]

Plaintiffs argue instead that arbitration is an "attempt to avoid judicial scrutiny." (ECF #12, PageID #63) ("[Frank & Woolridge] has filed a motion to compel arbitration, urging the Court to essentially dismiss the case and force the parties into a private forum away from any public scrutiny." . . . "Plaintiffs contend that arbitration is not appropriate here due to the illegal nature of the loan agreements and the systematic misconduct involved. Arbitration would effectively shield [Frank & Woolridge's]] actions from public view and deny Plaintiffs the ability to pursue class-wide relief."). (*Id.*).

*Motion to Stay and Compel Arbitration* should be denied:  First, "that arbitration is not appropriate here due to the illegal nature of the loan agreements and the systemic misconduct involved"; second, that the Loan Agreement in its entirety is unenforceable because it is unconscionable; and third, that Frank & Woolridge waived its right to arbitration by initiating the collection action against Hernandez Negron and Acevedo Delvalle in the Lorain County Court of Common Pleas.

Each of these arguments are addressed in turn.

## B.  **Plaintiffs' Arguments Against Stay and Arbitration**

### 1.  *Appropriateness of Arbitration/Alleged "Illegality"*

Plaintiffs' first, and primary, argument against compelling arbitration is an allegation that the entire Loan Agreement is void from the outset due to the allegedly illegal nature of the loan interest terms, and therefore any right to enforce the Arbitration Agreement contained in the Loan Agreement does not exist.  (ECF #12, PageID# 65) ("An arbitration term in a contract that is 'void ab initio' is not enforceable under Ohio law because the agreement would not exist.  Given the illegal nature of the loan terms in this case, the entire agreement is *void ab initio* (or void from the beginning) and any purported rights emanating from the agreement do not exist since the agreement never formed.") (parenthetical in original).  In support, Plaintiffs cite *Terry v. Bishop Homes of Copley, Inc.*, C.A. No. 21244, 2003 Ohio App. LEXIS 1397 (Ohio Ct. App., 9th Dist., Mar. 26, 2003).

As an initial matter, even if *some* of the terms of the Loan Agreement (here, the interest rate terms) are inconsistent with, or violate, Ohio law, this does not necessarily render the *entire* agreement unenforceable.  "The doctrine of severability provides that 'where a contract consists of several agreements, one of which is illegal, the illegal portion can be severed if it does not destroy

-8-

the symmetry of the contract." *Black v. Pheils*, No. WD-03-045, 2004 Ohio App. LEXIS 3873, at

*21 (Ohio Ct. App., 6th Dist., Aug. 13, 2004), *citing Vincent v. Santa Cruz*, 647 P.2d 379, 381

(Nevada 1982); *see also Hamilton v. Fischer Single Fam. Homes IV LLC*, No. 3:24-CV-101, 2024

U.S. Dist. LEXIS 137299, at *15-*20 (S.D. Ohio Aug. 2, 2024) (compelling arbitration despite

finding two provisions of arbitration agreement relating to a "loser pays" clause and an out-of-

state forum clause "substantively unconscionable," and severing these terms from conditions of

arbitration).

The Court also finds that the case cited by Plaintiffs, *Terry v. Bishop Homes of Copley,

Inc.*, actually *supports* staying the case and compelling arbitration.  Plaintiffs' *Complaint* asserts

only one allegation about the "illegality" of the Loan Agreement, specifically, that it "recites an

interest rate that violates state law by charging a rate of interest [greater than] the maximum

amount of interest rate permitted by Ohio Revised Code § 1321.57."  (ECF #1, *Complaint*, ¶¶ 6-

12) (insert supplied).  The *Complaint* acknowledges that Plaintiffs executed the Loan Agreement

with Mariner Finance, and makes no allegations of fraud or "fraud in the inducement" as to *either*

the Loan Agreement *or* its included Arbitration Agreement.  (ECF #1, ¶ 6).  In their opposition to

Defendant's *Motion to Stay and Compel Arbitration*, while Plaintiffs assert that the Loan

Agreement is both "procedurally" and "substantively" unconscionable, (ECF #12, PageID #65-

68), they do not allege fraud or "fraud in the "inducement" as to either the Loan Agreement as a

whole or the Arbitration Agreement.

Yet, even if they had alleged that the Loan Agreement was fraudulently induced, such a

claim would not defeat a motion to stay and compel arbitration:

> [T]he Ohio Supreme Court has held that "to defeat a motion for stay brought
> pursuant to R.C. 2711.02, *a party must demonstrate that the arbitration provision*

*itself in the contract at issue, and not merely the contract in general, was fraudulently induced.*" "Thus, in instances where a party concedes that it willingly manifested assent to a contract that includes an arbitration clause, but claims that it was induced to do so by fraud, mistake, or duress, * * * or that some other circumstance justifies that party in seeking to avoid the contract, * * * that party's claim is simply a defense to arbitrability that is itself arbitrable." Furthermore, it has been held that "in the face of a valid arbitration clause, questions regarding the validity of the *entire* contract must be decided in arbitration."

\* \* \* \* \*

In the case sub judice, it appears that Appellees have presented the defense of fraud in the inducement because they have claimed that they were fraudulently induced to enter into the contract. However, Appellees have only alleged that the purchase agreement was induced by fraud, rather than the arbitration agreement clause itself. In their response to Appellant's motion to dismiss or stay pending arbitration, Appellees did not argue that they were fraudulently induced into signing the arbitration agreement. In fact, Appellees did not even argue that Appellants made any misrepresentations or false promises regarding arbitration. They simply alleged that Appellants "committed both fraud in inducing [Appellees] to sign the contract at issue, and continued that fraud throughout the course of the parties' relationship. * * * [Appellees] were defrauded by [Appellants] individually and in concert; and the purported 'agreement' reached as a result thereof is void and unenforceable."

Nowhere in Appellees' response to Appellants' motion to dismiss or stay pending arbitration, or in their complaint, do they argue that they were fraudulently induced into accepting the arbitration clause contained in the purchase agreement. As the record is devoid of any evidence that Appellants made any misrepresentations about the arbitration agreement itself, we cannot conclude that Appellants' claims are exempt from Chapter 2711 on the ground that their cause of action is based on fraud.

*Terry v. Bishop Homes of Copley, Inc.*, C.A. No. 21244, 2003 Ohio App. LEXIS 1397, at \*13-\*16

(emphasis in original, citations omitted).

Here, Plaintiffs' arguments go to the merits of the case, namely whether the entire Loan Agreement is enforceable because of the allegedly illegal interest terms cited within it. The Loan Agreement provides that "[a]ny dispute or controversy that concerns the validity, enforceability or

scope of the note as a whole is for the arbitrator, not a court, to decide." (ECF #1-1, *Note, Security Agreement & Arbitration Agreement (Ohio)*, PageID #12). "[C]hallenges [to] the contract as a whole on the ground that the illegality of one of the contract's provisions renders the whole contract invalid" are not pertinent to a Court's analysis on a motion to compel arbitration. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). A "challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006). A party challenging the enforceability of an arbitration clause must tailor the challenge to the arbitration agreement itself. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). When a party challenges the contract as a whole, the challenge is not a challenge to arbitrability, it is a merits argument for the arbitrator to address. *Id.*

### 2. *Unconscionability of the Loan Agreement*

Plaintiffs' second argument against enforcing the Arbitration Agreement, and against issuing a stay, is that it is "unconscionable." (ECF #12, PageID #65-#68).

Under Ohio law, unconscionability is recognized as an equitable "ground for revocation of a contract." *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St. 3d 352, 358, 884 N.E.2d 12, 20 (Ohio 2008). Unconscionability embodies two separate concepts: (1) unfair and unreasonable contract terms, *i.e.*, "substantive unconscionability," and (2) individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible, *i.e.*, "procedural unconscionability." *Collins v. Click Camera & Video, Inc.*, 86 Ohio App. 3d 826, 834, 621 N.E.2d 1294, 1299 (Ohio Ct. App., 2nd Dist., 1993). The party asserting the unconscionability of an agreement necessarily "bears the burden of proving that the agreement is

*both* procedurally and substantively unconscionable." *Taylor Bldg. Corp.*, 117 Ohio St. 3d at 358,

884 N.E.2d at 20 (emphasis supplied). *See generally, Hamilton v. Fischer Single Fam. Homes IV LLC*, No. 3:24-CV-101, 2024 U.S. Dist. LEXIS 137299, at *9-*10 (S.D. Ohio Aug. 2, 2024).

### a. *Procedural Unconscionability*

With respect to Plaintiffs' claim of procedural unconscionability, Plaintiffs contend that

the Loan Agreement, including the Arbitration Agreement, was an "adhesion contract" wherein

Plaintiffs had such disparate bargaining power as compared to that of Mariner Finance that the

entire contract was procedurally unconscionable. (ECF #12, PageID #67-#68). Specifically,

Plaintiffs state:

> The Plaintiffs herein were never presented with a written copy of the agreement
> prior to being presented with a signature page on a tablet. Mariner never explained
> the specific contents of the Loan Agreement and never disclosed the existence of
> the arbitration language in the Loan Agreement. Importantly, Plaintiffs are native
> Spanish speakers with only limited [E]nglish language comprehension. As a
> result, Mr. Hernandez-Negron and Ms. Acevedo were unable to fully comprehend
> the significance of terms buried in the Loan Agreement and not fully disclosed.
> Indeed, neither had any idea that the Loan Agreement contained any arbitration
> term and, as a result, did not knowingly consent to this term.

(ECF #12, PageID #68).

To determine whether a contract, including an arbitration agreement, is procedurally

unconscionable, courts generally base their determination on a totality of the circumstances.

*Hayes v. Oakridge Home*, 122 Ohio St. 3d 63, 69, 884 N.E.2d 408, 412 (Ohio 2009) "All of the

factors must be weighed in their totality in determining whether an arbitration agreement is

procedurally unconscionable"). Procedural unconscionability . . . concerns the formation of the

agreement, and occurs when one party has such superior bargaining power that the other party

lacks 'meaningful choice' to enter into the contract." *Thomas v. Hyundai*, 154 N.E.3d 701,709

-12-

(Ohio Ct. App., 8th Dist., 2020) (*citing Devito v. Autos Direct Online, Inc.*, 37 N.E.3d 194, 201 (Ohio Ct. App., 8th Dist., 2015).

However, "inequality of bargaining power alone is insufficient to invalidate an otherwise enforceable arbitration contract." *Hamilton v. Fischer Single Fam. Homes IV LLC*, 2024 U.S. Dist. LEXIS 137299, at *11-*12 (*quoting Taylor Bldg. Corp.*, 117 Ohio St. 3d at 362, 884 N.E.2d at 23, *in turn citing, Vanyo v. Clear Channel Worldwide*, 156 Ohio App. 3d 706, 712, 808 N.E.2d 482, 487 (Ohio Ct. App., 8th Dist., 2004)).  Rather, the party seeking to establish procedural unconscionability must demonstrate a confluence of factors, including the parties' "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods [or services] in question." *Hamilton v. Fischer Single Fam. Homes IV LLC*, 2024 U.S. Dist. LEXIS 137299, at *12 (inserts in original, citations and internal quotation marks omitted).

Contracts of adhesion have been defined as "standard form contract[s] prepared by one party, to be signed by the party in a weaker position, usually a consumer, who has little choice about the terms." *Hamilton v. Fischer Single Fam. Homes IV LLC*, 2024 U.S. Dist. LEXIS 137299, at *13 (*quoting Porpera v. Gatliff Bldg. Co.*, 160 Ohio App. 3d 843, 848, 828 N.E.2d 1081, 1084 (Ohio Ct. App., 9th Dist., 2005)).  However, "even a contract of adhesion is not in all instances unconscionable per se" as "few consumer contracts are negotiated one clause at a time." *Hamilton*, 2024 U.S. Dist. LEXIS 137299, at *13 (*quoting Taylor Bldg. Corp.*, 117 Ohio St. 3d at 363, 884 N.E.2d at 24).  An agreement with adhesive characteristics may still be procedurally conscionable so long as the weaker party was afforded a "realistic opportunity to bargain."

-13-

*Hamilton*, 2024 U.S. Dist. LEXIS 137299, at *13 (*citing Eagle v. Fred Martin Motor Co.*, 157 Ohio App. 3d 150, 173, 809 N.E.2d 1161, 1179 (Ohio Ct. App., 9th Dist., 2004)).

Admittedly, the position of Plaintiffs versus that of Mariner lends itself to a reasonable assumption that Plaintiffs likely possessed lesser bargaining power when compared to that of Mariner Finance.  While not explicitly stated in the *Complaint* or motion briefing, the Loan Agreement may well have been the first of its kind for Plaintiffs, while it was likely within the regular course of business for Mariner Finance.  However, the parties' differing bargaining power does not, on its own, evidence unconscionability.  Even if Mariner Finance's loan agent may not have individually explained every detail of the Arbitration Agreement portion of the Loan Agreement to Plaintiffs, each of the provisions of the Arbitration Agreement were summarized and highlighted in boldfaced, all capital letters, surrounded-by-a-box text preceding the full text of the Arbitration Agreement, including:  (1) Mariner Finance's (and Plaintiffs') ability to elect binding arbitration instead of court; (2) giving up rights to sue in court, as well as limitations on discovery and rights to appeal; (3) giving up rights to a judge or jury trial; and (4) rights to participate as a class representative or a class member in arbitration or any other proceeding.  Moreover, the waiver of all class action rights was again explicitly stated in boldfaced all capital letters at the end of the full text of the Arbitration Agreement provisions.  Contrary to Plaintiffs' assertions, these terms were hardly "buried in the Loan Agreement."

Plaintiffs further argue that their status as native Spanish speakers should be taken as conclusive evidence that they were unable to fully comprehend the significance of terms of the Loan Agreement, and that neither had any idea that the Loan Agreement contained any arbitration term.  This argument is presented in an affidavit sworn to by Mr. Hernandez Negron typed in

-14-

English (with no indication that it was ever translated).

While "illiteracy or inability to understand the language of the agreement" are certainly factors to consider in evaluating bad faith among the totality of the circumstances in determining procedural unconscionability, *Hamilton*, 2024 U.S. Dist. LEXIS 137299, at *13 (*quoting Hayes*, 122 Ohio St. 3d at 68, 884 N.E.2d at 413, *in turn quoting*, *Taylor Bldg. Corp.*, 117 Ohio St. 3d at 362, 884 N.E.2d at 22-23), if Plaintiffs' inability to understand the language of the Loan Agreement was as great as they now seek to claim, this is surely a fact they would have been aware of prior to seeking a loan with Mariner Finance, such that they could have brought an interpreter with them to look over the contract or point out its key terms prior to signing the Loan Agreement. "The crucial question is whether a party, considering his education or lack of it, had a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print." *Dozier v. Credit Acceptance Corp.*, 135 N.E.2d 804, 808 (Ohio Ct. App., 8th Dist. 2019).

Here, as already explained, the Arbitration Agreement was clearly delineated and labeled as an "arbitration agreement," as well as being outlined and summarized in a capital letters, boldface-printed, box-highlighted section at the beginning of the terms outlining the Arbitration Agreement. *See Ball v. Ohio State Home Servs.*, 168 Ohio App. 2d 622, 627, 861 N.E.2d 553, 556 (Ohio Ct. App., 9th Dist., 2006) ("[T]he Ohio Supreme Court [has] held that there is no requirement that an arbitration clause be explained orally to a party prior to signing when the provisions at issue were not in fine print."). Nor is there any claim that Plaintiffs sought to have terms of the Loan Agreement or the Arbitration Agreement explained to them. *See Hamilton*, 2024 U.S. Dist. LEXIS 137299, at *15 ("Plaintiffs have not so much as alleged that they either

-15-

wanted to ask questions and could not, or that they asked questions only to be shot down and told to sign the [agreement]. . . . For good measure, the record before the Court suggests that Plaintiffs, by their own motivations, acted quickly [to accomplish the purpose of the purchase agreement at issue], but without regard for the details of the agreement meant to put them there. Plaintiffs' position is nothing if not understandable. Nevertheless, it does not establish procedural unconscionability.") (inserts supplied).

Plaintiffs had a reasonable opportunity to understand that the Loan Agreement included an arbitration clause, including an opportunity to act responsibly in relation to seeking to obtain a significant money loan from a lending institution in a language in which they claim a less-than-fluent proficiency. It is also notable that the Defendant in this case seeking arbitration, Frank & Woolridge, is the creditor's (Mariner Finance) outside counsel, who had no role in Plaintiffs' decision not to bring an interpreter when signing the Loan Agreement.

The Court does not find that the Arbitration Agreement, the agreement at issue in this case in deciding whether to stay and enforce the arbitration clause of the Loan Agreement, is procedurally unconscionable. Given that the Court does not find procedural unconscionability, the analysis on unconscionability could end here, as "the party seeking to avoid an arbitration agreement must establish that the agreement is both procedurally and substantively unconscionable." *Dozier v. Credit Acceptance Corp.*, 135 N.E.2d at 809; *see also Hamilton*, 2024 U.S. Dist. LEXIS 137299, at *15 ("Having found that the . . . arbitration clause was not procedurally unconscionable, the Court 'need not address whether it was also substantively unconscionable.'"). Notwithstanding, the Court also finds that Plaintiffs fail to show substantive unconscionability as well

-16-

### b. *Substantive Unconscionability*

Plaintiffs point to various factors in support of their argument that the Loan Agreement is substantively unconscionable:  (1) that Plaintiffs allegedly had no ability to negotiate the terms of the Loan Agreement; (2) that there was a disparity in the fact that Mariner (not Defendant Frank & Woolridge)[8] maintained its ability to seek relief in state court if it so chooses, while Plaintiffs are forced to arbitrate all claims; (3) that unspecified "terms of the Loan Agreement are also problematic"; and (4) it is unfair that under the Arbitration Agreement, Plaintiffs waive their right to seek relief as class representatives.  (ECF #12, PageID #67).

As outlined in *Hamilton*:

> "An assessment of whether a contract is substantively unconscionable involves consideration of the terms of the agreement and whether they are commercially reasonable."  There is "[n]o bright-line set of factors for determining substantive unconscionability."  When determining whether an agreement is substantively unconscionable, Ohio courts have previously considered factors such as "the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability."  Though, "[t]he factors to be considered vary with the content of the agreement at issue."

*Hamilton*, 2024 U.S. Dist. LEXIS 137299, at *16-*17 (citations omitted).

---

[8]     There is no dispute that, under the terms of the Arbitration Agreement, Defendant Frank & Woolridge has the power to invoke the Arbitration Agreement.  It expressly provides:  "By signing this note, you agree to this Arbitration Agreement (Agreement).  This Agreement is part of your note.  In this Agreement, 'you,' 'we,' 'us,' and 'our' include subsidiaries, affiliates, agents, employers, successors, and assigns."  (ECF #1-1, *Note, Security Agreement & Arbitration Agreement (Ohio)*, PageID #12).  Defendant Frank & Woolridge, as legal counsel to Mariner, was acting as an agent to enforce the loan obligation.  *See Rogers v.·The Marshal*, 68 U.S. 644, 651 (1863); *State v. Parham*, 121 N.E.2d 412, 426 (Ohio Ct. App., 10th Dist., 2019); *see also Hodson v. Javitch & Rathbone, LLP*, 531 F. Supp. 2d 827 (N.D. Ohio 2008) (compelling arbitration of Fair Debt Collection Practices Act claims against law firm as the credit card lender's "authorized representative").

-17-

Here, Plaintiffs have not provided evidence that the terms of the Arbitration Agreement with Mariner Finance, the creditor, were commercially unreasonable or unconscionable in any other way. In fact, the Arbitration Agreement mandates that the parties' disputes be resolved by a neutral arbitrator who "must be [an] attorney[] or retired judge[] with at least 15 years of experience practicing law" and "must apply substantive governing law consistent with the Federal Arbitration Act and applicable statutes of limitation and privileges." (ECF #1-1, PageID #12) (inserts supplied). All the remedies available to Plaintiffs as individuals in this action are available in arbitration. (ECF #1-1, PageID #12). Moreover, if the arbitration proceeding is fundamentally unfair, Plaintiffs may seek to have the award vacated under both federal and Ohio law. See 9 U.S.C. § 10 (Federal Arbitration Act, stating grounds for vacating an arbitration award); Ohio Rev. Code § 2711.10 (Ohio Arbitration Act, same).

In addition to failing to establish procedural unconscionability, Plaintiffs also have not demonstrated that the Arbitration Agreement is substantively unconscionable.

### 3. *Waiver of the Right to Compel Arbitration*

Finally, Plaintiffs claim that Defendant Frank & Woolridge waived any right to invoke the arbitration clause in this case because Defendant, as counsel for the creditor, Mariner Finance, filed the complaint in the state court action. (ECF #12, PageID #68-#71).[9]

The Arbitration Agreement contains a clear non-waiver clause that expressly states that filing an action in state court, even by Mariner Finance, does not act as a waiver of a right to compel arbitration:

---

[9]

    Defendant here, Frank & Woolridge, acting as Mariner Finance's counsel, was not a "party" to the state court action.

-18-

> **Non-Waiver.** Even if a Claim is brought in court, you or we may choose to arbitrate any Claim made by a new party or any Claim later asserted by a party in that action or any related or unrelated lawsuit. Nothing in that litigation shall constitute a waiver of any rights under this [Arbitration] Agreement.

(ECF #1-1, PageID #12) (insert supplied).

The claim now brought by Plaintiffs against Defendant Frank & Woolridge clearly falls within the definition of "Claim" under the Arbitration Agreement:  "Claim means any claim or dispute, whether arising in law, equity, or otherwise, and regardless of the type of relief sought arising from or relating to . . . servicing and enforcement of the obligation. . . .  Claim includes initial claims, counterclaims, cross-claims, and third-party claims.  Claim also includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation and ordinance." (ECF #1-1, PageID #12).  Moreover, under the Arbitration Agreement, Plaintiffs expressly waived any right to proceed as class representatives or to participate as a class member in a class action related to a Claim.  (ECF #1-1, PageID #13).

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  Federal courts routinely recognize that claims based on a debt-collector's alleged wrongdoing in attempting to collect a debt necessarily "relate" to the debtor's "account" with the original creditor and therefore must be arbitrated in the face of a valid arbitration agreement governing claims related to the debtor's account. *Cronin v. Portfolio Recovery Assocs., LLC*, No. 15-CV-00786, 2016 U.S. Dist. LEXIS 57541, at *3 (M.D. Fla. Apr. 29, 2016); *Marcario v. Midland Credit Mgmt., Inc.*, No. 17-CV-414, 2017 U.S. Dist. LEXIS 175129, at *13 (E.D.N.Y. Oct. 23, 2017); *St.*

*Pierre v. Advanced Call Ctr. Techs., LLC*, No. 15-CV-02415, at *7-*8 (D. Nev. Nov. 22, 2016).

Plaintiffs, however, contend that Defendant Frank & Woolridge waived any right to enforce the arbitration clause by filing an action on behalf of Mariner Finance against Plaintiffs in state court. In support of this contention, Plaintiffs cite *Debois, Inc. v. Guy*, 161 N.E.3d 99 (Ohio Ct. App., 8th Dist., 2020):

> The facts in *Debois* are nearly identical to the case sub judice. In *Debois* the Plaintiff: (1) invoked the Court's jurisdiction by filing the complaint, (2) filed a motion seeking default judgment, (3) participated in a case management conference, and (4) participated in taking discovery. The Court deemed this as taking an "active role" in litigation and, as a result, concluded that the Plaintiff had acquiesced to the Court's jurisdiction. *Debois, Inc.*, supra, at ¶ 40. Since the trial court has discretion to make this determination, the appellate court affirmed the trial court's decision over the Plaintiff/Appellant's objection and after disregarding its argument that the contract's "non-waiver" language preserved their rights despite engaging in litigation. Id. at ¶ 52.

(ECF #12, PageID #69).

While the Court acknowledges some similarities between the facts that the court addressed in the *Debois* case and this one, it also finds the differences in the facts of this case, as well as the case posture of *Debois*, do not compel this Court find that Defendant has waived its right to enforce the Arbitration Agreement.

The first key factor is that the *Debois* appellate decision did not involve an independent and dispositive evaluation of whether some level of participation in litigation prior to a party seeking to compel arbitration amounts to a "waiver" of the right. Rather, the appeals court decision in *Dubois* was solely focused on whether it was an "abuse of discretion" for the trial court to have so found. *See Debois*, 161 N.E.2d at 104 ("Whether a party has waived the right to arbitrate is subject to the abuse of discretion standard. Thus we will review Appellant's first assignment of error for abuse of discretion. Abuse of discretion implies that the trial court's ruling

-20-

was 'unreasonable, arbitrary, or unconscionable' and requires 'more than an error of law or judgment' to merit reversal. . . . *The trial court is in the best position to determine whether a party has waived its right to arbitrate*.") (emphasis supplied).

When determining waiver, the "essential question is whether, based on the totality of the circumstances, the party seeking arbitration has acted inconsistently with the right to arbitrate. *Debois*, 161 N.E.2d at 105.  Because waiver calls for consideration of the totality of the circumstances, "[w]hether a party waived their right to arbitrate is dependent on the facts of that particular case." *Debois*, 161 N.E.2d at 105.

The Court begins by noting that "in light of the policy favoring arbitration, a party arguing waiver bears a 'heavy burden.'" *Debois*, 161 N.E.2d at 105 (citations omitted).  "To establish waiver, the party seeking waiver must demonstrate (1) that the party knew of its right to assert an argument or defense and (2) that the totality of the circumstances establish that the party acted inconsistently with that right." *Debois*, 161 N.E.2d at 105 (citations omitted).

Key differences between the facts at issue in *Debois*, versus those at issue here, weigh in favor of granting the motion to stay and compel arbitration.  First, and primarily, in *Debois* the party seeking to arbitrate after participating in litigation had engaged in substantially more "litigation" in the state court prior to seeking arbitration than Defendant Frank & Woolridge here, including filing a third-party complaint seeking indemnification from an outside party and participating in, and responding to, a considerable amount of discovery after moving for a stay. *Debois*, 161 N.E.2d at 106-108.  Here, Defendant Frank & Woolridge filed a motion to compel arbitration in the state court proceeding essentially immediately (within the 28 days to answer or respond to the counterclaim filed against it in the state court collection action, pursuant to OHIO R.

-21-

CIV. P. 12(A)).  (*See* ECF #12-2, *Docket Entries in State Court Action*, PageID #78).  The record of the state court case shows that between the time of the filing of the complaint in March 2024 and September 2024, the only activity involved Frank & Woolridge attempting to perfect service on Hernandez Negron and Acevedo Delvalle, followed by a motion for default filed on September 16, 2024.  (ECF #12-2, *Docket Entries in State Court Action*, PageID #78).  The filing of the motion for default then caused Hernandez Negron and Acevedo Delvalle to retain counsel and respond to the complaint.  (*Id.*).  There was a case management conference held one month later, at which time Frank & Woolridge withdrew the motion for default.  (*Id.*).  Two weeks later, Hernandez Negron and Acevedo Delvalle filed an answer and counterclaim, to which Frank & Woolridge then immediately moved for a stay and to compel arbitration.  (*Id.*).  Thus, in this case, unlike *Debois*, the party seeking the stay and arbitration did so at the first event of "engaged" litigation.  The only activity in the state court case since that time has been briefing on the motion to stay and compel arbitration.  (*Id.*).

The same situation exists in this federal case, where Frank & Woolridge filed its motion to stay and compel arbitration immediately in response to the *Class Action Complaint for Damages* (ECF #1).  (See ECF #8, *Motion to Stay and Compel Arbitration*).  In fact, the appellate decision in *Dubois* noted this as a distinguishing factor in the case before it in its decision.  *Dubois*, 161 N.E.2d at 110 ("Both cases are also distinguishable from the instant case in other ways.  In *Household Realty Corp. v. Rutherford*, [No. 20183, 2004 Ohio App. LEXIS 2146 (Ohio Ct. App., 2nd Dist., May 14, 2004)], the plaintiff seeking to arbitrate took no other action after initiating the litigation and moved the court to stay litigation pending arbitration of the counterclaims immediately after the counterclaims were filed.") (citation insert supplied).

-22-

Second, in *Dubois*, there was a question over whether the claim at issue before the trial court was arbitrable at all. *Dubois*, 161 N.E.2d at 112. Such is not the case here. There is no real question on whether disputes involving the "servicing and enforcement of the obligation," including the legality of the interest terms, fall within the ambit of arbitrable "Claims" under the Arbitration Agreement. (ECF #1-1, *Note, Security Agreement & Arbitration Agreement (Ohio)*, PageID #12).

Finally, while the court in *Dubois* affirmed the trial court's finding that the party seeking arbitration had waived its right to rely on an "anti-waiver clause" in the arbitration agreement by engaging in substantial litigation prior to seeking a stay, such was not the case here.

The Arbitration Agreement contained a clear anti-waiver clause:

> **Non-waiver.** Even if a claim is brought in court, you or we may choose to arbitrate any Claim made by a new party or any Claim later asserted by a party in that action or any related or unrelated lawsuit. Nothing in that litigation shall constitute a waiver of any rights under this Agreement.

(ECF #1-1, *Note, Security Agreement & Arbitration Agreement (Ohio)*, PageID #12).

While a party may waive the right to rely on such a non-waiver clause by engaging in substantial litigation activity following the filing of a motion to stay and compel arbitration, Plaintiff' position here (essentially arguing that engaging in *any* litigation – most of which here appears to have been in a effort to obtain service against Plaintiffs in the state court collection action), would read the non-waiver clause – which permits the filing of a motion to stay and to compel arbitration following initiation of a court action – into effective nonexistence.

The central holdings of *Dubois* are that "the trial court is in the best position to determine whether a party has waived the right to arbitrate," 161 N.E.2d at 104, that "[w]hen determining waiver, the 'essential question is whether, based on the totality of the circumstances, the party

seeking arbitration has acted inconsistently with the right to arbitrate,'" *id.* at 105, and that a court

of appeals will apply a deferential "abuse of discretion" standard in evaluating a trial court's

reasoned decision, *id.* at 104.  This Court does not find that Defendant Frank & Woolridge, who

has not engaged in *any* litigation before this Court in the federal case (beyond immediately moving

for a stay and to compel arbitration), and which similarly moved for stay and to compel arbitration

in the state case immediately upon being served with a counterclaim governed by the arbitration

clause, has not waived its right to arbitrate Plaintiffs' claim.

### III. <u>CONCLUSION</u>

Accordingly, *Defendant Frank & Woolridge Co., LPA's Motion to Stay and Compel*

*Arbitration* (ECF #8) is GRANTED.  This case is STAYED in its entirety pursuant to the Federal

Arbitration Act, 9 U.S.C. § 1, *et seq*., pending completion of binding arbitration proceedings.

The parties are further instructed to notify the Court of any settlement occurring prior to or

during the process of arbitration, or upon the completion or other resolution of the arbitration

process.

IT IS SO ORDERED.


DONALD C. NUGENT
United States District Judge


DATED: March 18, 2025


-24-